Andrew J. Lindstrom (*pro-se litigant*)
449 Sheep Camp Drive
Dayton NV 89403
775-508-6010
kxlindstrom@gmail.com

UNITED STATES DISTRICT COURT

NEVADA

| | |
|---|---|
| ANDREW J. LINDSTROM, | Case No.: 3:24-cv-00152-ART-CSD |
| Plaintiff, | |
| vs. | STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) |
| NEVADA STATE MILITIA (INCLUDING THE NEVADA NATIONAL GUARD, NEVADA OFFICE OF THE MILITARY, OR ANY OTHER "COMMON-USE" NAME) | |
| Defendant | |

Here now, Plaintiff Andrew J. Lindstrom, pro se litigant, presents this *Stipulated Motion for Summary Judgment* to the record in support of his petition for *Summary Judgment*

## I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND

**Timeline Preceding Plaintiff's *Freedom of Information Act* Lawsuit**

Plaintiff was terminated from his position with the *Nevada Office of the Military (State of Nevada employment part of the Nevada National Guard)* on May 13th, 2022, for being "suspected" of emplacing signs that disclosed sexual harassment, coverups, fraternization, and general sexual misconduct that was suppressed by particularly the Plaintiff's former First Sergeant (Justin Harris), and a particular incident of LTC Curtis Kolvet "making out" with an enlisted soldier (Bailey Naylor) during Mr. Kolvet's tenure as a commander of a Nevada National Guard unit during a guard-sanctioned Christmas ball *(see ECF no. 94 Ex 9)*. Plaintiff also had been experiencing workplace harassment from two *Division Emergency Management Employees* and former senior-enlisted Nevada Guard members, Robert Boldry and Stephen Lawrence, from the period of 2021 to 2022 while Plaintiff was employed as both as a State of Nevada Contractor, State of Nevada Employee, and Nevada National Guardsman. Plaintiff also witnessed copious amounts of payroll fraud engaged by Mr. Boldry and Lawrence, taking "advantage" of the federal "5-4-9" schedule of their supervisor, LTC James Phoenix, who had every other Monday off from work via a federal work schedule,

which conflicted with Mr. Boldry and Lawrence's "five-eights" schedule. The Plaintiff reported this on several occasions to his supervisor, Mr. Chad Reese, Nevada National Guard Warrant Officer and Federal Civilian employee, whom the Plaintiff observed take no action. Because both Mr. Boldry and Lawrence were "politically connected" with senior leadership in the NV Guard, particularly to the former Adjutant General Ondra Berry, personnel were afraid to "cross" Mr. Boldry and Lawrence for fear of reprisal and retaliation. Previously, Boldry and Lawrence were involved with the termination of state contractor Tim Bechtol for personal issues relating to prior military service together in the NV Guard, to which none were serving anymore; Mr. Boldry threatened the Plaintiff on several occasions with the statement that "he had the ear of the General (MGEN Berry), who listened to him and did what he said". Mr. Boldry even appeared on a Friday while the Plaintiff was drilling with his NV Guard Unit, the 150th Maintenance Company in Carson City, where Plaintiff also worked his State of Nevada civilian job to "leverage" his former Guard status to bring the Plaintiff into an office with his First Sergeant (Justin Harris) to threaten Plaintiff's State of Nevada Job again regarding personal issues in the civilian workplace.

Plaintiff filed his whistleblower with the State of Nevada Human Resources Commission in December of 2022 in accordance with Nevada's own whistleblower statutes *NRS 284.611-284.671*. Under these statutes, Plaintiff was entitled to "any" document relating to his dismissal under *NRS 284.390(3)* within five days of requesting it, which was not provided in the initial discovery plan *(See ECF no. 94 Ex. 3)*, citing that the *Nevada Office of the Military* and the *Nevada National Guard* were clearly separated state versus federal entities *(ECF no. 94 Ex. 3)*. One month later, Plaintiff filed both a public records request under Nevada's "sunshine" laws under *NRS Chapter 239 (ECF no. 94 Ex. 15)*, and the *Freedom of Information Act (5 USC § 552)* which the National Guard Bureau received on May 30th, 2023 – transferring the request back to the Nevada National Guard. As presented in *ECF no. 94*, the Attorney General of Nevada (Senior Deputy Attorney General Scott Husbands Esq.) purposefully misled the Plaintiff into believing that the State of Nevada had no lawful way to access the documents requested and sent the Plaintiff on a "wild goose chase" to obtain documents necessary to his whistleblower appeal. The Defendant's counsel (Nevada Attorney General) in the Plaintiff's whistleblower matter even provided a supplementary affidavit under oath and penalty of perjury made by LTC Laura Boldry (Robert Boldry's wife) that the Nevada National Guard had no way to produce emails and that DISA would "send" them to the requester directly *(ECF no.*

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 2

*94 Ex. 2)*. Based on declarations made under oath by COL Remus *(ECF 13-1)*, Federal Attorney Daniel McFadden *(ECF no. 87/92)*, LTC Justin Swick Justin Swick *(ECF no. 87)*, and SSG Efrain Avalos Valdez *(ECF no. 87/92)*, their claims directly contradict LTC Boldry's claims made on the 5th of June 2023 regarding the availability of emails. Compared to the statements made by McFadden, Remus, Avalos-Valdez, and Swick, they prove LTC Boldry's claims to be fabricated, false, and prepared and submitted to the record by the Attorney General of Nevada; Plaintiff argues this was done intentionally to avoid having to produce evidence in a whistleblower proceeding and conceal damaging evidence. This will be further discussed in later sections *(IV, VIII – not exhaustive list)*.

**Original FOIA Request in July of 2023**

Plaintiff's FOIA Request was transferred from the National Guard Bureau to the Privacy Officer, or around SSG Efrain Avalos-Valdez, on or around July 26th, 2023, and was assigned case# J-23-0199. Defendant acknowledged the receipt of the request on or around August 21, 2023 (AR 005). Within approximately 9 days of the request (on around August 30th), Defendant notifies the Plaintiff of extending the request from the stipulated 20 working days to September 14th, 2023, citing "unusual circumstances" (AR 006), but fails to explain or provide any reasoning or explanation as to what the "unusual circumstances" are. Defendant files their "closeout" letter on September 14th, 2023, citing various privileges (primarily under (b)(5), (b6), & (b)(7)(c) claiming the "personal privacy" exemptions (AR 008). What will be further discussed is the incorrect "attorney-client" exemption applied between the *Nevada Office of the Military* and the Nevada National Guard JAG Office. Within this closeout letter, Defendant claims that the Nevada Office of the Military and the Nevada National Guard are "separate" from one another and therefore cannot produce the documents requested, yet still enjoys attorney-client privilege. *Upjohn Co. v. United States 449 U.S. 383 (1981)*, known as the "bible" for attorney-client privilege, establishes that if privacy cannot be guaranteed between an attorney and their client, such as introduction of a third or non-represented party (non-client), or external communication that does not involve their client, then no "A2C" privilege exists. This will be further discussed in later sections, but it is important to identify early in this filing that from the very beginning, the Defendant violated their explicit "duty-of-care" when dealing with non-represented or non-attorney parties, which Plaintiff argues is a deliberate attempt to mislead or misrepresent the ability, willfulness, and candor of the Defendant's compliance with the *Freedom of*

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 3

*Information Act (5 USC § 552)*, which was only filed as a third and "final" request to receive a copy of the investigation that was used as grounds to dismiss the Plaintiff from employment with the State of Nevada, which after two years was provided only on February 4th, 2025 by Deputy Attorney General Ryan McConnell Esq. after the Defendant and Attorney General of Nevada claimed they could not obtain the documents *(ECF no. 94 Ex. 2 & 4)*. As previously cited, Army Regulation (AR) 25-55 B-15 exclusively establishes the "Chief of the National Guard Bureau" as the *Initial Denial Authority (IDA)* to make redaction or "release versus denial" decisions. LTC Swick's declaration *(ECF no. 87)* in his position as counsel for the *Office of the General Counsel* for the National Guard Bureau confirmed that the National Guard Bureau (NGB) was the "IDA" authority, but that requests were "processed locally". Plaintiff contends this declaration made on the record was evasive and misleading so as not to compromise the Defendant's case. This statement also provided no reference or legal authority to NGB's ability to delegate the authority. As presented in previous filings and this one, DOD M5400.7/07 (respectively) requires that an IDA be established under the DOD's own policy. The entirety of this Appendix is presented below from AR 25-55:

> **B–15. Chief, National Guard Bureau**
> The CNGB has program oversight and IDA authority for FOIA requests made to the Army National Guard (ARNG) organizations of the 50 States, the Territories, and the District of Columbia. This oversight authority includes all records created and processed by ARNG organizations or personnel pursuant to Federal laws or regulations. These records include, but are not limited to: ARNG administrative investigations, organization and training, plans, operations, historical files, military support, domestic operations, drug interdiction and counterdrug activities, construction, civil works, aviation, financial and environmental matters, as well as medical and personnel records of current ARNG Soldiers and technicians. Records of former ARNG Soldiers and technicians, including deceased personnel, are processed by Human Resources Command. Records created by active duty ARNG personnel are processed by the respective organization the individual was assigned to while on active duty. Records of the NGB are processed pursuant to DOD 5400.7 and are not subject to this regulation.

The most important information to "glean" from this regulation is that NGB (referred to as CNGB also) has the exclusive oversight and IDA authority regarding "ARNG administrative investigations", meaning that the original inspector general investigation from the Nevada Air National Guard 152nd *(ECF no. 94 Ex. 4)* should have been provided in some redacted form. To be discussed in later sections, AUSA Leibow (Defense Counsel) herself has conceded there are unreleased investigations into the Plaintiff in addition to the one provided at the *Motions Hearing* held February 12th, 2025 *(ECF no. 94)* and the 15-6 conducted against the Plaintiff in 2021, accusing him of "dual compensation". As stipulated in AR 339, while the request was ongoing, the Plaintiff corrected the search telling the privacy officer (Valdez) that "this is the

wrong investigation". The Plaintiff provided two emails in the attachment *(ECF no. 94 Ex. 7 & Ex. 8)* referencing the investigation, inquiry, or administrative document the Defendant had in its possession. Named Defendant still did not produce the requested investigation/s requested declining to release the investigation. According to the timeline from named Defendant, Plaintiff did not receive the first round of responsive documents (emails) from Defendant until over a month after the extended deadline of September 14th, 2023 – nearly 8 months after Defendant sent Plaintiff their "closeout" letter citing various privileges declining to produce emails. This behavior is frequent, well-documented spanning two years, in a deliberate attempt to conceal documents and unlawful surveillance of the named Plaintiff. Based on new developments and communication with the *Nevada Highway Patrol* regarding the *CJIS* access in April of 2024, Plaintiff has been able to determine where the CJIS terminal was unlawfully accessed.

**Filing of FOIA lawsuit**

After constructively exhausting all administrative avenues for Plaintiff's request to receive a copy of the investigation (NRS 284.390(3) & NRS 239 – *Sunshine laws*) including Plaintiff's original FOIA request originated in May of 2023; Plaintiff filed a federal FOIA lawsuit against the Nevada National Guard on March 29th, 2024; Plaintiff executed a successful service that was accepted by the Nevada Attorney General's Office on April 16th, 2024 – filed with the Court on April 25th, 2024 *(ECF no. 8)*. Defendant failed to respond to the service by any legitimate counsel the United States Attorney or Attorney General of Nevada, which named Defendant has contested via their *Motion to Set Aside Default* which was granted by the Court *(ECF no. July 8th 2024)*.

**Parallel Whistleblower Retaliation Hearing**

Already disclosed to the Court on numerous occasions – including the *Motions Hearing* held February 12, 2025 by Magistrate Judge Denney, Plaintiff informed both named Defendant and their federal counsel, that the Plaintiff had a concurrent and pending whistleblower appeal filed under Nevada's *Whistleblower Statutes* in December of 2022, and alleged that the *Freedom of Information Act* had been deliberately delayed and violated by unreasonable delay and improper withholding, redaction, and "concealing" of documents under the rationale that release of requested documents would be damaging to parties who were previously named in Plaintiff's *State of Nevada Whistleblower* appeal. To be discussed in later sections (Mostly, but not exhaustively sections V, & VII-X), both federal attorney and current Nevada Guardsman

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 5

1    Daniel McFadden & subordinate to COL Remus (also named and current State Judge Advocate of Nevada

2    National Guard) were named as witnesses to testify in Plaintiff's State of Nevada Whistleblower Appeal.

3    Both parties provided statements and declarations under oath to this FOIA suit including Plaintiff's

4    whistleblower hearing conducted virtually on July 9th 2025. Under FRCP Rule 607 – Plaintiff will formally

5    move to impeach COL Remus & Mr. McFadden as witnesses via their testimonies made via *ECF no. 13-1,*

6    *87 & /92*, and Mr. McFadden's filings made providing the administrative records *(ECF no. 57 & 111)* - to

7    be explained in the discrepancy in statements made in this manner compared to other matters, including

8    drawing on the *Federal Rules of Evidence Rules 604-607. Under FRE Rule 101* – also the scope of these

9    rules apply to federal civil proceedings.

10       During Plaintiff's whistleblower appeal hearing, Daniel McFadden testified under oath to Hearing

11   Officer Gary Pulliam Esq. that the Attorney General of Nevada can represent the *Nevada National Guard*

12   under "certain" circumstances. His response, directly contradicts COL Remus Statements taken under oath

13   and affirmations of perjury that the Attorney General of Nevada "does not" represent the Nevada National

14   Guard in litigation *(ECF no 13-1)*. There are now three cases that debunk this claim – the first one naming

15   COL Remus in the suit and successfully dismissed by Deputy Attorney General Nicole Ting citing various

16   privileges as its "State" status as the State of Nevada militia (A-24-895693-C, A-25-910121-C, & removed

17   case 2:2025-cv-00919). This exhibit was prepared and submitted to the record and was the foundation for

18   the granting of Defendant's *Motion to set aside Default*. Far outside the definition of a "harmless mistake",

19   this false statement prepared by COL Remus, and submitted by Defendant's counsel fundamentally

20   changed the outcome of this suit, therefore violating 18 USC § 1621-1623. Because these statements were

21   made under oath and general material and false statements stated by COL Remus and a general failure of

22   AUSA Rose to verify that his statements were indeed true, meets all the requirements of "material false

23   statements", "false statements under oath in federal proceedings", and "subornation of perjury", this will be

24   further addressed in sections IV, VII-X. However, two key case precedent are *Brogan v. United States*

25   *(1998) & United States v. Gilliland (1941)*, the first (*Brogan*) criminalizes making false or fraudulent

26   statements within the jurisdiction of the United States Government, while *Gilliland* clarifies that *18 USC §*

27   *1001* seeks to prevent the government from being "undermined" by false statements. Based on continuous

28   litigation across three proceedings, the Defendant continuously has presented different and contradictory

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 6

legal arguments depending on the venue, always for a more favorable outcome. As stipulated in Plaintiff's *Second Motion for Default*, Deputy Attorney General Nicole Ting Esq. is actively representing (and previously represented) the Defendant both in federal litigation and *State of Nevada* litigation, therefore disproving Defendant's claim.

Because of numerous false statements made by Defendant and their counsel on the record, their conduct has compromised the integrity of this civil suit, and a general violation of candor, including Plaintiff's equitable access to justice guaranteed under the 14th Amendment's "equal protection" and Plaintiff's Constitutional right to "due process". A well-documented pattern of "dilatory" behaviors spanning three years by Defendant and their counsel/s show that the Defendant never intended to process Plaintiff's FOIA request correctly, and great effort was taken to hide damaging behaviors engaged by the Defendant, including unlawful stalking, surveillance, unlawful access of a *CJIS* terminal which will be further explored.

**Standard of Review**

In *Cavanagh v. Nevada State Militia* (3:2024-cv-00196 ECR no. 27) Presiding Judge Traum cited *Hampton v. Cal., 83 F.4th 754, 761 (9th Cir. 2023)* concurred with the 9th Circuits opinion that when moving to dismiss a complaint that courts "accept as true all well-pleaded allegations and construe them in the light most favorable to the non-moving party". With this standard of review already decided in concurrent FOIA litigation, Defendant has surrendered any argument to dismiss this complaint via any *Motion for Summary Judgment*. To be presented in the merits of perjury, misconduct, procedural violations, and general failures of both the Defendant and the United States Attorney of Nevada, Presiding Judge Traum also cited *O'Brien v. Welty, 818 F.3d 920, 933 (9th Cir 2016)* stating "A claim has facial plausibility when the plaintiff pleads factual content that allows the court the reasonable inference that the defendant is liable for misconduct alleged". Holding this legal standard that "plausibility" exists when "factual content" is presented of misconduct, and that only an "inference" made, Defendant and their counsel have repeatedly demonstrated a pattern of misconduct, harassment of the Plaintiff and potential whistleblower and witnesses (*ECF no. 17*), and general dilatory behavior to provide documents under the *Freedom of Information Act*. Based on this simple standard of review, it should be taken as argument that Defendant and US Attorney of Nevada far exceeded this requirement, to be further stipulated.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.        LITERATURE REVIEW REGARDING THE FREEDOM OF INFORMATION ACT (FOIA) AND PROCEDURAL REQUIREMENTS

The *Freedom of Information Act* (5 USC § 552) was enacted in 1967 for public transparency regarding the release of government records. The published federal website *foia.gov* presents information to the general public to request documents. As previously presented in Plaintiff's original *Motion for Summary Judgment*, in a proposed Amendment to FOIA in 1983, the *Department of Justice* testified that a party's litigation status with an agency requesting records does not "enhance or diminish" a requestors right to FOIA. As has been observed over a period of two years and previous exhaustion of two previous legal standards (*NRS 284.390(3) & NRS 239*), Defendant failed to deliver responsive documents in a timely manner and improperly redacted and withheld documents. In the "closeout" letters received in both administrative records, Defendant frequently redacted and withheld documents based on the following three exemptions 3 & 5, which are:

3. Information that is prohibited form disclosure by another federal law

5. Privileged communications within or between agencies.

As presented with the case *Upjohn v. United States*, "attorney-client" privilege has limits, including if a party cannot guarantee privacy or disclosure to a third party. As presented in *ECF no.*  87/92, both privacy officer SSG Avalos-Valdez and federal attorney Daniel McFadden claimed their inability to produce documents creating a separation between the *Nevada Office of the Military* and the *Nevada National Guard*. This "wordplay" was disproven by Plaintiff Felicia Cavanagh's three 8th judicial cases of Clark County. Further review of AR 26-27 (Army Rules of Professional Conduct) states that military JAG officers are "expressly prohibited" from practicing law outside of military justice without prior written approval. AR 27-26 further A further review of Presiding Judge Traum's denial of Defendant's *Motion to Dismiss* in Cavanagh's FOIA suit, Judge Traum ruled that there are "two avenues to judicial review of a FOIA request", including an appeal of the administrative process, where an appeal would be "futile". The futility exception applies after two prior exhaustions of a discovery request and *State of Nevada* public records laws requiring release of records requested to the *Plaintiff*, denying the Attorney General's inability to produce requested documents (investigation) only to have the investigation that Defendant denied its existence of be provided nearly two years later by the Attorney General on February 4th, 2025. Found in the Army's own *Rules of Professional Conduct (AR 27-26)*, *Padilla v. Kentucky,* 130 S.Ct. 1473 (2010) that held the duty to give correct advice is equally clear." Since Defendant's own FOIA process was clearly and deliberate violated, a group of

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 8

1  attorneys who "known or should have known" the correct legalities and applications of FOIA and its exemptions

2  were incorrectly applied.

3  **Standard of Review of *CREW v. US Department of the Army et al. (1:21-cv-02482-DLF Ex. 1)***

4       Included in this stipulated motion and *Exhibit 1*, the entire opinion of *CREW v. US Department of the Army*

5  *et al,* which US District Court Judge Dabney L. Friedrich rules against the *South Dakota National Guard* for

6  improperly withholding communications and other documents between their then-state Governor Kristi Noem, the

7  Adjutant General, which is Governor-appointed, and other responsive documents. The Court recognized the South

8  Dakota National Guard's "murky" hybrid status, but rules in matters of FOIA that the Guard is a federal agency. The

9  Court found that under FOIA, a federal agency "must prove that each document that falls within the class requested

10  either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." Citing

11  *Perry v Block,* 684 F2.d 121, 126 (C.C. Cir. 1982). This lawsuit was filed in the United States District Court of

12  Columbia including the *Department of the Army* within the suit mainly because "the Federal Government provides

13  virtually all of the funding, the material, and the leadership for the State Guard units," *id.* (quoting *Perpich, 496*

14  *U.S.it 51)*. Based on testimony from LTC Swick on *ECF no. 87-3*, he concedes and concurs with this ruling that a

15  States' National Guard is a dual-status agency, with federal oversight, funding, and regulation. Plaintiff reminds the

16  court that there is an outstanding *Joinder Motion* to add the *National Guard Bureau* as co-defendant to this lawsuit,

17  as they were involved in the initial receipt of Plaintiff's *FOIA* request of May 2023. The Court opinion also found

18  that "Agency affidavits are entitled to a presumption of good faith (citation omitted), and a court may grant

19  summary judgment based on an affidavit if it contains reasonably specific detail and is not called into question by

20  contradictory record evidence or evidence of bad faith" *Judicial Watch v. U.S. Secret Serv., F.3d 008, 215 (D.C. Cir.*

21  *2013)*. As presented in the original administrative records, on numerous occasions the Plaintiff tried to correct and

22  amend his request to assist privacy officer SSG Efrain-Avalos Valdez to source the correct investigation even

23  providing discovery documents from the Attorney General. Since the Plaintiff received an 84-page "secret"

24  investigation conducted into him without his knowledge from the Attorney General of Nevada (*ECF no. 94 Ex. 4*).

25  The agency then cited *Exemption 5* of the "deliberative process" (A2C privilege) in their authority to withhold any

26  investigations, or failed to disclose. The Defendant in their "affidavit" failed to mention the existence of any

27  investigation or inquiry, and incorrectly cited again attorney-client privilege in communications between the *State of*

28  *Nevada Office of the Military HR Department* and the NV Guard's JAG Office. As cited in this opinion, if an

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 9

agency is found to be in bad-faith in providing an affidavit and grounds for withholding documents, the Court may grant summary judgment. The Defendant claims that intra-agency or inter-agency communications are protected yet claim that the *Nevada Office of the Military* were "separate" for purposes of FOIA. This opinion also negates that legal argument, particularly "discussions" between state personnel (Adjutant General and State Officials) were protected. Since the State of Nevada JAG Office was not authorized to represent the State of Nevada in employee disciplinary matters, and therefore enjoys no formal protections of Exemption 5 of FOIA. The opinion further addresses that the issue of state-federal communications and stated "courts have repeatedly refused to classify federal-state communications as "interagency", even when in aid of a dual federal-state partnership". The citations for this justification is *People for the Am. Way Found.,* 516 F. Supp. 2d at 36-39 and *Town of Waterford v. N.Y. State Dep't of Env't Conservation*, 18 N.Y.3d 652,658 (2012). Because JAG Officers were providing illicit and unauthorized legal services based on state and federal statutes, and engaging in external communications, they enjoy no protection of "attorney-client" privilege or any "deliberative process" under any FOIA exemption. The Court ruled on Exemption 5 specifically stating that the purpose of Exemption 5 "was not to protect Government secrecy pure and simple".

One further issue to address is in the Defendant's response to Plaintiff's *Motion to Enforce Court Order* (*ECF no. 93*), Defendant sought to "downplay" COL Remus' involvement in the matter. Included in this filing is *Exhibit 2*), which is named Defendant's "pre-hearing" statement in Plaintiff's *Whistleblower Appeal*, Chief Deputy Attorney General provided an un-redacted copy an email previously redacted by the Attorney General *(Ex 2. P31)*. Below is an excerpt of legal advice given by COL Remus in his official capacity as the *State Judge Advocate* of the Nevada National Guard *(Ex 2 P31)*:

"I spoke with LTC Remus, who is our attorney. He advised we collect the facts for Valerie. We can do this informally. Since Andrew Lindstrom is on probation and a state employee, and he is not in the military, we keep this informal along the lines for Valerie". Included in *Exhibit 2 (P31-33)*, the un-edited version of email communication between LTC Robert Kolvet, LTC James Phoenix, LTC Remus, and State HR employees Valarie Wilson & Cheryl Tyler, and Chad Remus showing a clear discussion of the JAG's office providing legal services to the *State of Nevada* which is unauthorized under the previous legal citations. Under *Padilla v. Kentucky* (2010), even "informal" advice given by an attorney to a party can hold liability, if it is found to be incorrect. Holding true to *Sperry v. Florida* (1963), a practice of law does not solely exist in litigation, and includes anything done in a party's

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 10

1   professional capacity as a lawyer or where allowed by law. It should be noted to the Court that during the Plaintiff's

2   Whistleblower Hearing that was conducted virtually between the Plaintiff and the Defendant on July 9th 2025, the

3   Plaintiff cross-examined COL Remus, one specific question is that he asked him was his familiarity of *Sperry v.*

4   *Florida (1963)*, to which he stated he was not "aware" of this case. One other question the Plaintiff asked COL

5   Remus was whether or not he as a JAG officer he could represent the NV Guard in Federal Employment labor

6   matters to which he claimed he did, again defying AR 27-26, and recent Supreme Court Ruling *National Guard*

7   *Bureau v. AFGE* (2023) that held that "dual-status" federal technicians under the "Technician Act of 1968" are

8   considered federal employees and have access to federal employment collective bargaining rights and other *FLRA*

9   standards. This demonstrates a continuous issue of the Defendant's JAG Office trying to "bypass" state and federal

10  labor protections in Nevada by utilizing "military-style" investigations, often conducted in secret against employees

11  to avoid legal disciplinary processes. In relation to FOIA, prohibited practices of law in representation of state and

12  federal agencies by military JAG officers is not an exemption under FOIA, and instead was incorrectly applied

13  deliberately to conceal this fact.

14      This email was a communication from LTC James Phoenix, TSGT Brown (Federal Employee Labor Relations),

15  and Valerie Wilson (State HR Employee). LTC Phoenix contacted the State HR Department and asked about

16  Plaintiff's State of Nevada employment status, to which was divulged, including claiming "I suggest you speak with

17  Valerie about his before you inquire into this matter for her. She can provide you with PII and policy to start you

18  off". Coinciding with the *"CREW"* ruling, it is indisputable that the *Nevada State Militia (NV Guard) & Nevada*

19  *Office of the Military* communicate with one another, provide documents, and "bleed" over jurisdictional lines. Only

20  in this single suit (Plaintiff's FOIA suit) does the Defendant attempt to present itself as a "divided" state versus

21  federal separate entities that are unable to produce documents from one another.. Plaintiff reminds the Court that the

22  US Attorney tried deliberately to misrepresent this fact to the Court at the *Motions Hearing* held on February 12th,

23  2025 – "pivoting" into issues of candor. With this ruling, the Court found that regardless of "origin" of documents,

24  the South Dakota National Guard had violated the *Freedom of Information Act*. Therefore, the Court should concur

25  with this ruling on this issue alone. The Defendant has been trying to present itself as two separate entities to the

26  Court, and based on the various Cavanagh lawsuits this is found to be false and a deliberate behavior of the named

27  Defendant. The Court specifically found "Communications between the Adjutant General and the state are not

28  exempt from disclosure under FOIA". Since the JAG Office was involved in disciplinary matters of the Plaintiff

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 11

during his time as a *State of Nevada Employee* and also involved with the processing of Plaintiff's FOIA request, they do not enjoy any protection or exemption under FOIA, and instead was misused to intentionally to "hide" misconduct, attorney malpractice, and illicit practice of law.

### III.    STANDARD OF REVIEW OF "CONSTRUCTIVE EXHAUSTION"

The "crux" of Defendant's argument for dismissal rests upon the Defendant's claim that Plaintiff failed to exhaust administrative remedies for an appeal of FOIA. Including Presiding Judge's Traum's *Motion to Dismiss* in "parallel" FOIA lawsuit by Felicia Cavanagh, the Court found that Ms. Cavanagh had not demonstrated a burden of proof that an "appeal would be futile" – instead of dismissing the matter, Judge Traum issued a "stay" of the case. The Court recognizes that the purpose of FOIA is that "government transparency is critical to a functioning democracy." and cites *Yagman v. Pompeo,* 868 F.3d 1075, 1078-79 (9th Cir. 2017), and that a court may "waive" that requirement of "administration exhaustion would be futile". The Court has already ruled in this case that "FOIA agencies, including state components of the National Guard, to disclose information to the public upon request citing a sealed case. The Defendant in this matter has outright refused to provide documents from its state components falsely claiming that they enjoyed "attorney-client" privilege and did not have access to each component's documents. Exhausting two administrative processed prior and concurrently to Plaintiff's initial FOIA request proves that administrative exhaustion or appeal would have been "futile". Both the Attorney General of Nevada, the US Attorney, and the Defendant misrepresented the legal status of the Guard to the Plaintiff and this Court, effectively sending the Plaintiff on a "wild-goose-chase" spanning a period of two years. This alone demonstrates that exhaustion would be futile, and also demonstrates issues of candor, fairness of when dealing with opposing counsel, and ethics when dealing with unrepresented persons.

The *DOJ's* own references on their website *justice.gov* demonstrate clear and transparent examples when constructive exhaustion of the administrative process. A brief but non-exhaustive list will be presented and its application to granting not only this *Motion for Summary Judgement* but also Plaintiff's *Joinder Motion*, and *Second Default Motion*.

i.    *Bory v. U.S. R.R. Ret. BD* – court denies Defendant's *Motion for Summary Judgement* for a "question of fact existing on the record". The Plaintiff has already produced one investigation that was withheld by the Defendant and provided by the Attorney General of Nevada after claiming (NV Attorney General) that they had no access to records they deemed "federal". This exceeds this standard.

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 12

ii. *Godaire v. Napolitano* (2010) – Court held that the Plaintiff had constructively exhausted administrative remedies prior to filing by attempting to follow the DOJ's own regulation regarding FOIA requests. The Court issued the opinion that "the agency has no right to resist disclosure because the request fails reasonably to describe records unless it has first made a good faith attempt to assist the requester in satisfying that requirement" Here, the court finds that plaintiff's "Complaint does not indicate that the DOJ attempted to assist [him] in refining his FOIA request". The Plaintiff made multiple attempts with the Privacy officer SSG Efrain Avalos-Valdez on numerous occasions to refine his FOIA request in initial responsive documents, including informing him that this was the "wrong" investigation conducted against the Plaintiff. Therefore, the Plaintiff constructively exhausted his administrative remedies.

iii. *Wall v. EOUSA (2010)* – Court denies Defendant's argument that plaintiff failed to exhaust administrative remedies by claiming Plaintiff "failed" to provide a fee-waiver request. The second part of the ruling is applicable to this FOIA suit, with the Court holding that "the purposes behind the exhaustion requirement have been more than adequately served here" because "the Department was not deprived of an opportunity to create a factual record". Numerous communications exist between the Plaintiff and Privacy Officer Valdez where Plaintiff went far beyond the requirement to refine and assist the privacy officer of Plaintiff's FOIA request. Plaintiff received a different Army investigation into the Plaintiff to which he corrected the search, it should be noted that the Plaintiff is aware of any communication or response from Valdez when Plaintiff requested his request be refined. Holding to Judge Traum's denial of Defendant's *Motion to Dismiss* in *Cavanagh v. the Nevada State Militia* citing that the Defendant is required under FOIA to provide both state and federal records under the prescriptions of FOIA. Plaintiff's FOIA constructive exhaustion in this matter far exceeds this standard.

iv. *K-mar Indus, Inc. V. DOD* (2010) – Court denied defendant's motion to dismiss Plaintiff's FOIA claim based on the agencies contention that "delays" were justified, even with notification of Plaintiff's right to appeal constructive exhaustion had been met. Plaintiff disputes the time of the Defendant's claim that they sent emails via USPS certified mail to the Plaintiff in May of 2024, as it conflicts with their original "affidavit" citing privacy and retaliation concerns regarding "sworn testimony". Based on the

1    8-month delay (which Plaintiff argues was correctly around July of 2024), there was an un-necessary

2    delay in emails. The Defendant also failed to disclose which email account was provided, and made

3    "arbitrary" decisions on which emails to release and hold.

4    **v.**    *Cuban v. SEC* (2010) – Court found that administrative exhaustion had been met based on "vague"

5            communications between agency and Plaintiff. In this matter the Plaintiff made very specific

6            statements regarding requests, to which Defendant made very evasive and vague communications and

7            failed to disclose the particular responsive documents Plaintiff had requested. Because of this,

8            constructive exhaustion has been met.

9    **vi.**    *Schwarz v. DOJ* (2010) – Court found that "failure to file administrative appeal in connection with her

10            FOIA requests to the Coast Guard and the FBI does not affect the Court's subject matter jurisdiction.

11            The court further finds although plaintiff's claims against those agencies could be dismissed for failure

12            to exhaust, the existence of subject matter jurisdiction does not make dismissal on that ground

13            mandatory. Instead, the Court concludes that it is appropriate to adjudicate the case on the merits

14            because there are no prudential reasons for avoiding a final resolution to Plaintiff's claims".

15        A standard review of case clearly supports that constructive exhaustion of an administrative appeal has far been

16    met, specifically regarding misleading and false statements from the Nevada Attorney General, COL Remus, SSG

17    Efrain Avalos-Valdez, and Daniel McFadden regarding Plaintiff's FOIA requests. The first delay in responsive

18    documents of 8 months was merely an attempt by the Defendant to attempt to demonstrate to the Court that it was

19    attempting to comply with FOIA by providing a "selectively-screened" set of documents sent in paper-form to the

20    Plaintiff's address. The Plaintiff could not locate whose email account emails were from, and Plaintiff argues that

21    emails were improperly redacted to conceal workplace harassment Plaintiff had been the recipient of from 2021-

22    2022 while Plaintiff was employed there. A pattern exists of Defendant's misapplications of exemptions to conceal

23    improper and unlawful behavior, which violates the opinion issued under the *CREW* ruling which was provided by

24    the Defendant's own counsel, the US Attorney of Nevada. Constructive Exhaustion has also been met with the

25    futility exception simply on the grounds that the Defendant was untruthful about the availability, custody, and

26    location of documents available. As already ruled in Judge Traum's *Denial* of the same Defendant's *Motion to*

27    *Dismiss* in the Cavanagh FOIA case, the Defendant is required to comply with FOIA requests, no matter what the

28    "origin" of jurisdiction was of said-documents.

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 14

**IV.    DISCREPANCIES/INCONSISTENT & CONTRADICTORY CLAIMS MADE BY DEFENDANT IN DIFFERENT MATTERS**

The Defendant, their counsel/s the United States Attorney of Nevada and Attorney General of Nevada in this FOIA lawsuit, makes contradictory claims about the Nevada National Guard's legal organization and status in order to "avoid and frustrate" the FOIA process. Below is a list of contradictions made by the same Defendant across several proceedings that prove the Guard, continuously makes false statements and claims depending on the jurisdiction and venue hoping for a more favorable outcome, and since false statements have impacted outcomes in proceedings, this act is subject to prosecution under 18 USC § 1001.

i.    Referencing *ECF no. 13-1* under oath COL Remus stated that the Attorney General of Nevada "does not" represent the Guard in litigation. Based on two 8th Judicial Court cases of Clark County and one federal this is found to be contradictory and false claims made by Defendant under oath, and was utilized by Defendant to improperly have a *Motion to Set Aside Default* granted based on "lack of service". Below are three cases and their representations by the Attorney General of Nevada

    i.    *A-24-895693-C (Cavanagh v. Nevada State Militia)* – NV Guard retained Nicole Ting Esq. (Deputy Attorney General)

    ii.    *A-25-910121-C (Cavanagh & Duggin v. Ondra Berry et. al)* – NV Guard retained Nicole Ting Esq. and Jessica Whelan Esq. (Solicitor General of Nevada of the Attorney General)

    iii.    *2:25-cv-00919-JAD-MDC* – removed case from *A-25-910121-C* where named Defendant is currently represented by Nevada Solicitor General Jessica Whelan Esq, and Nicole Ting Esq. As presented in Plaintiff's original *Motion for Summary Judgement,* the Attorney General accepted service on behalf of the Nevada National Guard that Plaintiff is aware of including this suit (*ECF no. 8*). As presented in Plaintiff's *Second Motion for Default Judgement* based primarily on the recent discovery of *2:25-cv-00919-JAD-MDC*, AUSA Botros-Botros made very broad claims about the ability for a removal of case and representation of federal Guard members of the Nevada National Guard, which contradicts both Judge Traum's recent denial of dismissal in the Cavanagh FOIA case recognizing that Guard-members are both federal and state at the same time, in accordance with the *CREW* opinion.

ii.  In Plaintiff's *Whistleblower Appeal 2302992-GP* heard by hearing officer Gary Pulliam Esq., federal attorney Daniel McFadden (also current NV Guardsman serving subordinately to COL Remus) testified under oath that the in certain circumstances, the Attorney General of Nevada could represent the Nevada National Guard in litigation. Plaintiff has requested a copy of the recording from the *Appeals Office* from the *Nevada Hearing Personnel Commission* on August 14th, 2025 – but still not received it. The hearing was conducted virtually on July 9th, 2025 via the *Go-to-Meeting* video conference software *(see Ex. 3)*, and is waiting for a copy of the proceeding to submit to the record to further support that Defendant contradicts itself across different venues.

iii.  Contradictory with the statements made under *ECF no. 13-1* by COL Remus under oath, COL Remus testified before the Nevada State Legislature on April 2nd, 2025 at 3:30 PM providing testimony on behalf of the Nevada National Guard's "unique" State of Nevada status, that it could exempt itself primarily from Title 10 USC rights to guarantee a courts-martial within the Nevada National Guard. The Defendant even provided a "fiscal note" *(Ex. 4)* claiming that conducting courts-martials would be too burdensome to the State of Nevada costing the state more than 2.3 million dollars per biennium. Referencing *Exhibit 6*, former subordinate JAG Attorney Dana Griggs provided an exhibit largely rebuffing this claim by the Guard, citing that the State of Nevada only pays for Guard member's service when they are in a "State Active Duty" status and receive state pay. In their default status, Guard members exist on a Title 32 USC status when "not" in federal service. Also referencing *Exhibit 7*, Senate Fiscal Analyst Wayne Thorley concurred with bill sponsor Lisa Krasner that the financial cost to the State of Nevada would be closer to $0 than over two-million.

iv.  Federal Attorney Daniel McFadden and Privacy Officer SSG Efrain Avalos-Valdez in their statements and amended statements on the record *(ECF no. 87/92)* that the *Nevada Office of the Military & Nevada National Guard* were separate agencies distinct from one another. This contradicts *CREW v. the U.S. Department of the Army et.al (2023)* and Judge Traum's denial of dismissal in *Cavanagh v. the Nevada State Militia (2024)* that regardless of "origin" or components of documents, the Nevada National Guard including its state components are subject to the *Freedom of Information Act*.

v.  During the *Motions Hearing on February 12th, 2025* – AUSA Rose falsely attempted to claim in his official capacity and representation of the United States and its federal agencies that the Nevada

1   National Guard's Adjutant General, was the "head" of both the *Nevada National Guard & Nevada*

2   *Office of the Military*, claiming that because of this "separation", FOIA was not violated. He (Rose)

3   himself provided *CREW v. the U.S. Department of the Army et.al (2023)* as justification to represent

4   the Guard in this FOIA suit.

5   Under the *Federal Rules of Evidence* 604-607, Plaintiff moves to impeach the following witnesses and parties

6   who provided testimony:

7   i.      United States Attorney (Former AUSA Rose)

8   ii.     COL Kevin Remus

9   iii.    Federal Attorney Daniel McFadden

10  iv.     Privacy Officer SSG Efrain-Avalos Valdez.

11  Under the *Federal Rules of Evidence*, Defendant and their counsel via parties have claimed contradictory and

12  material facts inconsistent with one another, primarily to cause delay, create excessive confusion, and deny the

13  Plaintiff his rights to a correct administrative record of documents entitled to under 5 § 552 (FOIA). And with

14  18 USC § 1001 governing prosecution of parties who deliberately misrepresent any material fact through any

15  "scheme" could be held liable and face prosecution. The Defendant will address his requested relief in Section

16  X of this stipulated motion (sanctions) under FRCP Rule 11.

17  **V.      LACK OF CANDOR BY DEFENDANT AND COUNSEL**

18  Based on so many contradictory statements made by Defendant and Counsel regarding the Nevada National

19  Guard's legal status, their application of their "state versus federal" hybrid status, and false representation of

20  their status to in support of legal arguments to grant Defendant's *Motion to Set Aside Default (ECF no. 27)* – in

21  Magistrate Judge Denney's Order, he cited *Ewing v. Isaac* as grounds stating "A party is only obligated to

22  appear and defend if it has been properly served". Based on the "broad grounds" of the named Defendant's

23  *Removal Petition* in *Cavanagh v. State of Nevada ex Rel.*, the Department of Justice provided contradicting

24  arguments against itself, claiming that the US Attorney's office had "broad" grounds to remove not only a state

25  jurisdictional case into federal court, but obtained the US Attorney as representation on their own without any

26  order to, which contradicts the *Appearance Order* issued by the Court against the Nevada National Guard in

27  parallel FOIA case *Cavanagh v. the Nevada State Militia (2024)*. In this matter, Defendant waited until a

28  "clerk's entry of default" was entered before challenging the order. To be further addressed in IX (Dilatory

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 17

behavior), the named Defendant began this dilatory behavior as early as July of 2024, claiming they had not been served correctly, and is simply "picking and choosing" when they want to be a state or federal agency. As defined in the opinion of *CREW v. the Department of the Army et al (2023)*, the Court has little to no tolerance for this kind of behavior in proceedings, and misrepresenting the legal status in Court to obtain a favorable ruling, especially when dealing with an unrepresented person, is a violation of ABA Rule 4.3 regarding professional conduct of attorneys. Presiding Judge Traum's own order denying Defendant's *Motion to Dismiss in 3:24-cv-00196-ART-CSD* held in accordance with *Erickson v. Pardus, (2007)*, "Pro se filings are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. The Defendant and their counsel have sought to "take advantage" of the Plaintiff, a pro se litigant, in a host of procedural tactics to delay, misrepresent, and produce false statements to "win" this suit. 18 USC § 1001 has little tolerance for false statements and "concealment" of facts: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick [continued]" – which has been presented with numerous times with incomplete information, presented by DOJ attorneys on the record. *Kay v. United States 303 US 1 (193)* held that "actual damage or reliance is not an essential element of the offense". The Defendant clearly violated the *Freedom of Information Act* by all accounts with this Court itself holding that whether the documents are of state or federal jurisdiction, they are subject to FOIA – *see Denial Order of Nevada State Militia by Judge Traum in Cavanagh v. the Nevada State Militia (2024).* In this suit what the Defendant engaged in was not only General Perjury under 18 USC § 1621 regarding the Guard's legal organization as a federal entity and the false statement that the Attorney General of Nevada could not represent the Guard in Litigation *(ECF no. 13-1) /* what complements this law is 18 USC § 1622 of *Subornation of Perjury* by the United States Attorney's Office. The Plaintiff presented a clear timeline in his *Second Motion to Set Aside Default* that prior cases litigated by the Attorney General of Nevada (Deputy Attorney General Nicole Ting) to include the name of COL Kevin Remus before making statements on the record in 13-1 under oaths and affirmations of perjury. As presented under grounds for impeachment of witnesses, past behavior of the NV Guard shows that the Guard continues to make contradictory statements and legal arguments based on venue and favorable outcomes, including COL Remus, who himself testified to the Nevada State Legislature in consideration of SB 95. A lack of Candor has been observed since the very beginning of this suit. The Plaintiff

understands fully the seriousness of this accusation and makes it in good faith, based on continued observation of behavior by both the Defendant and their counsel, the United States Attorney of Nevada, and production of documents in the Guard's possession, primarily by the Nevada Attorney General.

## VI.     FURTHER RESEARCH REGARDING UNLAWFUL SURVEILLANCE AND STALKING OF PLAINTIFF BY NAMED DEFENDANT, UNLAWFUL USE OF *CJIS TERMINAL* (ECF NO. 94 EXHIBITS 4, 10 & 11)

The Plaintiff provides this "amended" information, reviewing *ECF no. 94 Exhibit 4*, and confidential communication with the *Nevada Department of Public Safety* and former NHP Dispatcher Meighan Quinn (Herzberg), Plaintiff's confidential law enforcement record was accessed by Air National Guard Security Forces at their *CJIS* terminal (FBI Maintained Database) under direction from LTCOL Parker who was the investigating officer *(ECF no. 94 Exhibit 4)*. The Plaintiff is only aware of the purpose of this terminal, which is to process security clearances for Guard members or assist the State of Nevada in their counter-drug program. Plaintiff's law enforcement record was not accessed for either of these reasons, and research in the matter illustrates that this qualifies as a violation of the *Privacy Act,* 4th Amendment in "right to privacy" and unwarranted search and seizure, and CFR's to be further clarified.

## VII.     COL KEVIN REMUS ESQ. AND HIS INVOLVEMENT IN THIS MATTER

*Exhibit 2* rebuffs the claim by Defendant and their counsel that COL Remus was not involved with the processing of the FOIA request; (P31), *Goeke v. United States* held that character and motivational evidence can be established in establishing motive. *State v. Willis* held that defined motive as the impulse or desire that induces unlawful behavior (issues of candor in this matter), and supports Rule 404 of the *Federal Rules of Evidence* regarding character evidence.

## VIII.     DISCREPANCY IN DISCOVERY DOCUMENTS PROVIDED TO THE DOCKET VERSUS PLAINTIFF

The Defendant manually filed a USB Flash Drive with the Court on August 8th, 2025, with an index of organized emails from the Plaintiff's email inbox, which was the original grounds for continuance granted by the Court on *ECF no. 109* to complete production of "discovery" documents. Based on this, Plaintiff and AUSA Leibow conferred on this issue *(ECF no. 105/107/109)*, Plaintiff countered that he would support an unopposed motion for a continuance, provided the Defense would produce the remaining outstanding investigations against

the Plaintiff, to which AUSA Leibow agreed to present the request to the Defendant. The reply from AUSA Leibow was that the Guard would support the request "in theory" if it did not "violate any law or regulation". The Plaintiff never had any further communication with the Defense until after the manual filing on August 8th, 2025, to which the Plaintiff received only an excessively large stack of the Plaintiff's email inbox from the Plaintiff's original FOIA request *(Exhibit 11 P1-P3 Center)*. Compared to the original responsive documents *(Exhibit 11 Left)*. Referencing *Exhibit 8*, the US Attorney's Office sent their original administrative record via a USB flash drive with an included index (not pictured), including a pre-emptive email with the password to access the software (Trellix) to notify the Plaintiff of the documents arriving. *Referencing Exhibit 9,* AUSA Leibow "reversed" her preliminary agreement not only to release the missing documents (and concedes there are withheld documents), but also claims there is a deficiency of USB drives with the United States Attorney's Office and their inability to provide one, but agreed to provide a CD, citing it would take a week to produce. The Plaintiff did not receive his CD with the responsive documents until August 26th, 2025, leaving the Plaintiff only 13 calendar days to review the responsive documents. The Defendant and their counsel also did not provide a password to the Plaintiff, and the Plaintiff was only able to gain access to the document by re-using the password previously provided in the first manual filing *(ECF no. 57* "Lindstrom@0246") – *see Exhibit 8*. Referencing *Exhibit 9,* the Plaintiff could not locate any "Bates" number in the administrative record that was provided in the first round of responsive documents. The Defense also provided the responsive documents in one "massive" .pdf file with 518 pages; the documents were also scanned as images so the Plaintiff could not use the "search" function in *Adobe Acrobat Pro* for text, but the "index" provided is searchable by text. Quite deliberately and plainly, this was done intentionally by the Defendant and their counsel, known as a "document dump", which is largely prohibited, and is addressed by *Flynn et al v. Love (2021)* and considered dilatory behavior by the Courts. Regardless, the documents the Plaintiff received from the Defendant are different from what was provided to the Court, which qualifies as a misrepresentation. Because the Court received an actual USB drive versus what the Plaintiff received, they would have no awareness that the Plaintiff had not received an electronic copy of 518 pages of documents, and instead received a hard copy, which makes it difficult for the Plaintiff to research based on the sheer volume of pages. The Plaintiff tried to resolve this informally with the Defendant and Counsel, but based on the response *(Exhibit 9)*, the Defendant is choosing to engage in dilatory behavior. The plaintiff will be mailing the "hard copy" documents he received, including the CD he received on

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 20

August 26th, 2025, to the Court as an addendum for comparison by all parties, but the Plaintiff has noticed that *ECF no. 57* versus *ECF no. 111* are disparate in their organization, with the first round of documents *(ECF no 57)* was well-organized and categorized in accordance with *Rule 34 FRCP*, with *ECF no. 111* just one PDF document with scanned images of text documents that the Plaintiff cannot use the "search" function. This is clear dilatory behavior and should not be tolerated, and is strictly prohibited under case precedent, with sanctions almost always issued and damages awarded to the injured party.

## IX.     DILATORY BEHAVIOR BY DEFENDANT AND COUNSEL

"Document dumping" is a dilatory behavior strictly discouraged by Courts in almost every jurisdiction, with a prescription for sanctions. The Court views this as a violation of FRCP 34 and 37 regarding the production of documents and a requirement for a "categorized" index of documents.

i.     *Raymond James & Assocs. Inc v. 50 N. Front St. TN, LLC*, the Court imposed sanctions for document dumping on the other party, essentially forcing a "manual review" of a large amount of documents. The Plaintiff received 518 of documents in an unsearchable format.

ii.     *SEC v. Collins & Aikman Corp (SDNY 2009)* – Court ruled against the SEC for document dumping an excessive amount of records on the Plaintiff in an unsearchable format for review by Plaintiff.

iii.     *US v.* Stevens (DCC) – US Government produced documents in an "unusable" format, with no "discernible beginning or end to a document". This applies to the manual filing the Plaintiff received (*ECF no. 111*), where the index provided in the electronic CD Plaintiff received does not coincide with the "combined" PDF document with no reference numbers (AR)

iv.     *Flynn v. Love No. 3:19-CV-00239-MMD-CLB (2023)* – opposing party "dumped" an excessive amount of documents via a manual filing to a *pro se litigant*. Magistrate Judge Baldwin noted that "discovery is supposed to proceed with minimal involvement of the Court, and that counsel should strive to be cooperative, practical, and sensible". – Court issued sanctions against the offending party.

Document dumping is dilatory behavior, which is not tolerated by courts. Dilatory behavior wastes court resources and time, is an abuse of the procedural and litigation process, and seeks to injure or "wear down" the other party. The Plaintiff reminds the Court that this is the second time the Defendant has document dumped on the Plaintiff, with *ECF no. 57* being produced 11 days before the Plaintiff's filing deadline. In this second document dumping, the Defendant filed a different administrative record with the clerk of the Court than what

1    the Plaintiff received, cleverly avoiding court awareness. The Plaintiff does not believe the Defendant's claim in

2    *Exhibit 9* that there was a "deficiency" of USB drives when they (Defendant) filed one with the Court,

3    according to *manual filing ECF no. 111*. USB Drives can be purchased for as little as $4.99. In the first

4    responsive document filing, the Plaintiff received a commercially available SanDisk drive with responsive

5    documents delivered and well-organized. Therefore, this is clear dilatory behavior, with effort taken by the

6    Defendant and counsel to "hide by volume" and "frustrate" both the FOIA litigation process. Also in *Exhibit 9*,

7    the Defendant, via counsel AUSA Leibow, concedes there are additional investigations withheld, and they will

8    not produce them, claiming that this FOIA litigation is solely a "review of the administrative record". This is

9    "circular logic" in nature, and the Plaintiff pleads with the Court to conduct an in-camera review of responsive

10   documents, including ordering the Defendant to provide a "Vaughn Index".


13                              [CONTINUES ON NEXT PAGE]

14                         **X.      SANCTIONS**

15   Left "unchecked", the Defendant and their counsel are going to continue dilatory behavior without Court

16   intervention. Under Rules 11, 34, and 37 of the FRCP, the Court can impose sanctions. After over a year of

17   litigation, the Defense and Defendant, through their general actions, misleading statements, misrepresentation of

18   material facts, and other "bad-faith" behavior, warrant the imposition of sanctions. The Department of Justice

19   and the US Government are not immune from sanctions, with the following case law for reference.

20   i.     *Berger v. United States 295 (1935)* – holds that misleading tactics solely to "win a case" is not a

21          justification for misleading behaviors.

22   ii.    *United States v. Kojoayan (9th Cir 1993)* – The 9th Circuit Court of Appeals held that lawyers must

23          "disclose exculpatory evidence seriously", and referred to the DOJ for disciplinary action. Observed

24          with document dumping by Defendant and Counsel.

25   iii.   *United States v. Fernandez (EDNY 1999)* – found Government attorneys reading confidential mail of

26          prisoners, sanctioned for "acting in bad faith" and "complete disregard for the judicial process".

27          Sanctions imposed for violating the judicial process (discrepancy of discovery documents).

28

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 22

iv.    *United States v. Lopez-Flore (10th Cir 2023)* – sanctions imposed for violating due process rights, misstating evidence, and making inflammatory remarks to the jury. Applies in this matter for violating Plaintiff's "due process" rights of FOIA, including providing discrepant evidence to the Plaintiff in comparison the Court.

v.    *Wharton V. Superintendent Graterford SCI (No. 22-2839)* – sanctions imposed by the Court for violating an attorney's "duty of candor to the Court".

Former AUSA Patrick Rose Esq. failed to file a *Motion to Withdraw* in violation of LR IA 11-6(b)(d), with opposing counsel AUSA Leibow basing one of her *Continuance Motion* based on the leaving of AUSA Rose, who left the US Attorney of Nevada in May 2025, with the Defense failing to notify the Court until July of 2025 according to correspondence form AUSA Leibow.

## XI.    CONCLUSION

In two years, the Defendant has failed to provide all responsive documents required to be produced under the *Freedom of Information Act*. Named Defendant and their counsel violated discovery provisions, local rules, and the *Federal Rules of Civil Procedure* by a host of dilatory "games", document dumping, failure to notify the Court of departing attorneys, harassment of "suspected" parties assisting the Plaintiff – a *pro se* litigant *(ECF no. 17)*, and false representations of material fact to influence and change outcomes *(Motion to set aside default)*. Presiding Judge Traum has already ruled in *Cavanagh v. the Nevada State Militia (2024)* that the Nevada National Guard is required to produce "state" and "federal" documents under the provisions of FOIA. There is no dispute that the Defendant in this matter intentionally violated FOIA to "frustrate" the process for a host of reasons, primarily to "cover up" unlicensed practice of law by military JAG officers, unlawful access to a law enforcement database, *CJIS* by National Guard Bureau personnel, unlawful stalking and surveillance of the Plaintiff, and general retaliation of Nevada National Guard Officers for being suspected of disclosing improper sexual behavior and the suppression of sexual harassment by Guard members *(see Exhibit 12)*. The Defendant will provide contradictory legal arguments before different Courts, essentially arguing against itself, with the United States Attorney of Nevada arguing against the National DOJ policy that a person's litigation status against an agency does not "enhance or diminish" a person's right to FOIA. The Defendant claims that investigations into the Plaintiff are "privileged" documents, but no provision or exemption of FOIA protects against unlawful behavior or unlawful surveillance as defined in *FBI v. Fazaga (2021)*. As seen in *ECF no 94 Exhibit 4*, Defendant had been surveilling the Plaintiff for an unknown period

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 23

with the sole purpose of gathering personal information covertly. Named Defendant essentially engaged in whistleblower retaliation, which is also federally protected, with the doctrine stating that a person's "motivation" for federal whistleblowing is irrelevant (citation omitted). *Exhibit 2* is a "near-complete" administrative record of Plaintiff's exhaustion of recourse for whistleblower retaliation, including numerous claims of sexual misconduct of senior Guard members, including naming one recruiter that was having sexual conduct with minors (SFC Lukas Haaglund) and never referred for federal prosecution by Chief of State COL Corey Schultz. The Attorney General's Office of Nevada continuously has "undermined" the Defendant's legal arguments of privilege, and assisted the Plaintiff in proving numerous false statements by the Defendant and the US Attorney, rebutting the legal status of the NV Guard. The Defendant never intended to honor or follow the *Freedom of Information Act*, and violated it intentionally to "frustrate the process" and avoid personal liability, for which no exemption within FOIA exists.

Therefore, the Court should **GRANT** this *Stipulated Motion for Summary Judgment*.

Dated this 8th day of September 2025.

_S/ Andrew J. Lindstrom_____
Plaintiff

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 24

**Appendix I – Articles and References Regarding Dilatory Behavior**

**A1 – "Document Dumping Leading to Sanctions" -** *https://www.jdsupra.com/legalnews/document-dumps-can-lead-to-court-5424990/*

**A2 – "US District Court of Nevada Magistrate Judge Carla Baldwin Issuing Sanctions for 'document dumping' -** *https://www.sidley.com/en/-/media/uploads/ediscovery/2023/flynn-v-love-no-3-19cv00239mmdclb-2023-wl-2561158-d-nev-mar-16-2023.pdf?la=en*

STIPULATED MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) - 25