UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ANDREW LINDSTROM,

Plaintiff,

v.

NEVADA STATE MILITIA, et al,

Defendants.

Case No. 3:24-cv-152-ART-CSD

ORDER

Andrew Lindstrom ("Plaintiff") brings this action against the Nevada National Guard ("the Guard") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") requesting information about Defendant's investigation of Plaintiff in 2022. (ECF No. 3.) Before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 112) and Defendant's Motion for Summary Judgment (ECF No. 122.) The motions are fully briefed.

## I.    Factual Background

The parties agree on the facts, and only dispute the application of the statute to Plaintiff's request. Plaintiff filed a FOIA request dated May 30, 2023, to the National Guard Bureau ("NGB") requesting:

"1. Copies of my enterprise email from April 1st 2022 - May 12 2022 - that's when the harassment took place versus my response.

2. Copies of email related to my termination from the following parties: Ondra Berry, Troy Armstrong, Cheryl Tyler, Valarie Wilson, Clayton Chappell, and Mr. Chad Reese. I believe there was some discussion prior to my termination so I'd like ample time to review the reasoning behind this.

3. Copies of emails from 1SG Justin Harris to Mr. Chad Reese (or any National Guard party) regarding the discussion of my employment with the State

1

I&E office as a contractor from February 21st until my termination date of May 2022.

4. Copies of emails from Mr. Robert Boldry, Stephen Lawrence relating to discussion of my former colleague Mr. Roy Hellen and myself - A fair time frame would be March 1st to May 12th of 2022.

5. An un-redacted copy of the 15-6 (Army Investigation) that was conducted against me. I know this investigation exists and I would like ample time to review it as well as it pertains to my termination as it pertains to this matter. Colonel Kevin Remus (JAG Officer) should have possession of this - there's good cause to believe that a disciplinary decision was made because of this investigation, most likely there also will be email traffic referencing this investigation (see item request 6) to NV OOM HR and/or General Berry.

6. Copy of any email traffic between JAG and NV HRO or personnel (most likely MajGen Berry) discussing my termination and/or referencing the 15-6 that began after April 1st.

7. Copy of termination paperwork from the NV OOM."

(ECF Nos. 57, AR001; 35 at 2; ECF No. 87-1 at 3.)

On July 26, 2023, the National Guard Bureau ("NGB") acknowledged Plaintiff's request. (ECF Nos. 57, AR003, 87-1 at 2; 94-1 at 1.) On August 2, 2023, the NGB transferred Plaintiff's request to the Nevada Army National Guard; it was received by then-Sergeant Efrain Avalos Valdez ("SSG Avalos") on August 21, 2023, who notified Plaintiff of the receipt. (ECF Nos. 57, AR005, 87-1 at 3.) On August 30, 2023, SSG Avalos notified Plaintiff of an extension on the request to September 14, 2023. (ECF Nos. 57, AR006, 87-1 at 6.)

On September 14, 2023, SSG Avalos sent the responsive documents the Guard had available with a cover letter that described its good faith effort to provide responsive documents. (ECF No. 57, AR007-009.) This included an explanation of those documents that the Guard was not a custodian of, including

state employee or state-related email from Cheryl Tyler and Valarie Wilson and any paperwork concerning the Nevada Office of the Military ("NV OOM"). (*Id.*) SSG Avalos advised that the Guard was still attempting to retrieve emails from Maj. Gen Berry, BG Armstrong, Mr. Chappell, Mr. Reese, Mr. Boldry, and Mr. Lawrence from NETCOM SJA eDiscovery, the custodian of those records. (*Id.*) The cover letter then goes on to describe the redactions and withholding of certain documents under the nine FOIA exemptions, describing those that cover the AR 15-6 investigation and communication between the Judge Advocate General ("JAG") and Nevada National Guard Human Resources Office ("NVNG HRO"). (*Id.*) It concluded by describing the process for appealing the response to the request. (*Id.*)

Between November 2 and 10, 2023, SSG Avalos received a new batch of responsive emails containing approximately twenty-two gigabytes of data. (ECF No. 87-2 at 6.) He forwarded them to the Office of the Staff Judge Advocate ("OSJA") for review and potential redaction. (*Id.*)

Plaintiff filed this FOIA lawsuit on March 29, 2024. (ECF No. 3.)

On May 7, 2024, SSG Avalos received the set of emails back from the OSJA with a cover letter explaining the redactions, which he mailed to Plaintiff that day, along with the process for appealing the response. (ECF No. 87-2 at 6.)

On June 9, 2025, the Guard emailed Plaintiff informing him that they had successfully retrieved previously corrupted emails. (ECF No. 105.) The Guard produced those emails on August 8, 2025. (ECF No. 111.) Once again, SSG Avalos attached a cover letter explaining that some of the emails were redacted pursuant to Exemptions 2, 3, 4, 5, 6, and 7 under FOIA. (ECF No. 111, Supplemental Administrative Record.)

## II.    Legal Standard

### a. Summary Judgment

Entry of summary judgment is proper if the movant shows that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting or disputing a fact "must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Further, "when parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and internal quotation marks omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id*. Courts must also liberally construe documents filed by pro se litigants. *See Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008).

### b. **FOIA**

FOIA establishes a "judicially enforceable public right" of access to federal agency records. *Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 639 F.3d 876, 882 (9th Cir. 2010), *abrogated on other grounds by Animal Legal Def. Fund*, 836 F.3d at 989.

FOIA cases are generally addressed through motions for summary judgment under Federal Rule of Civil Procedure 56. *Yonemoto v. Dept. of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir.2011) *as amended* (Jan. 18, 2012). In deciding whether summary judgment is appropriate in a FOIA case, the court must evaluate "whether the agency has met its burden of proving that it fully discharged its obligations under the FOIA." *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 800 (9th Cir.1996).

4

First, the agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents. *Zemansky v. U.S. Envtl. Prot. Agency,* 767 F.2d 569, 571 (9th Cir.1985). Second, if the agency satisfies its initial burden, the court must determine "whether the agency has proven that the information that it did not disclose falls within one of the nine FOIA exemptions." *Los Angeles Times Commc'ns,* 442 F.Supp.2d at 894. "The agency may meet its burden by submitting a detailed affidavit showing that the information 'logically falls within the claimed exemptions.'" *Id.* (quoting *Hunt v. C.I.A.,* 981 F.2d 1116, 1118 (9th Cir. 1992)). The courts afford a presumption of good faith to agency declarations submitted in support of claimed exemptions, *SafeCard Servs., Inc. v. S.E.C.,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) and a district court does not need to conduct an in camera review of each withholding unless an agency declaration "lacks sufficient detail or bears some indicia of bad faith by the agency," *Hamdan v. DOJ,* 797 F.3d 759, 779 (9th Cir. 2015). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Center for Investigative Reporting v. FBI*, 2021 WL 633867, at *2 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (cleaned up)). A federal court reviews an agency's response to a FOIA request *de novo.* 5 U.S.C. § 552(a)(4)(B).

## III.    Analysis

The parties filed cross-motions for summary judgment. (ECF Nos. 94, 112, 122.) The Guard's motion is styled as an opposition and cross-motion. (ECF No. 122.) As is often typical in a FOIA case, there are no genuine disputes of material fact in this case. *See Sigler v. U.S. Dep't of Health & Human Servs.*, No. 2:18-cv-00683-ODW, 2019 WL 4749896, at *1 (C.D. Cal. Sept. 30, 2019) (resolving whether certain documents fall within an exemption and whether information was reasonably segregated as a matter of law). The Court will address both motions and their responses together.

Plaintiff argues that he constructively exhausted his FOIA claim although he did not administratively appeal before filing suit and that the Guard acted in bad faith in reviewing and responding to his FOIA request, including improperly extending the timeline of response and failing to adjust their search for a state employment investigation. (ECF Nos. 94 at 10.) The Court construes his argument that the Guard search was not adequate under the statute. (ECF No. 94 at 19.) Plaintiff also argues that the Guard improperly applied FOIA exemptions to the redaction of documents provided to him. (ECF No. 94 at 22-23.)

The Guard does not respond to Plaintiff's argument that he constructively exhausted his FOIA claim and argues that it has fully complied with its obligations under FOIA by conducting adequate searches, locating the records Plaintiff sought, and reviewing and properly redacting those records. (ECF No. 94 at 6.)

Plaintiff makes a series of arguments alleging obstruction via the distinction between the state and federal elements of the Guard, that he was improperly framed in retaliation for reporting fraudulent payroll submissions, that an "unauthorized person" ran his license plate through a law enforcement database, that he was "stalked via various informational systems . . . and social media," and that his coworker was forced to sign a non-disclosure agreement that he would not share the results of various alleged investigations, as well as other unrelated allegations connected to Plaintiff's state whistleblower complaint. (ECF No. 94 at 12-19). These are not actionable allegations under a lawsuit under the FOIA, which responds to whether the Guard produced requested documents, and will not be considered by the Court at this time.

a. **Constructive Exhaustion**

FOIA requesters are generally required to exhaust their administrative remedies before filing suit. *Corbett v. Transportation Security Administration*, 116

F.4th 1024, 1028 (9th Cir. 2024). This includes filing administrative appeals within the subject agency. *See* 5 U.S.C. § 552(a)(6)(A)(ii). If an agency misses its statutory deadline of twenty business days to respond to a FOIA request, the statute deems the exhaustion requirement constructively satisfied, and the requester may pursue relief directly in federal court. *Id.* § 552(a)(6)(C)(i). The Ninth Circuit, however, has joined other circuits in holding that, if an agency responds to a request before a suit is filed, even if after the procedural deadline, a requestor must "actually" exhaust his administrative remedies under the FOIA. *Aguirre v. U.S. Nuclear Regulatory Commission*, 11 F.4th 719, 726 (9th Cir. 2021).

The Guard does not raise a challenge to constructive exhaustion in its Opposition. (ECF No. 122.) While Plaintiff filed suit after the Guard had provided an initial response within the statutory period (ECF No. 122 at 3), its initial cover letter acknowledged that it was still working to produce emails from the NETCOM SJA eDiscovery network and would send a follow-up response. (ECF No. 57, AR 008.) Therefore, because the Guard's response was not technically "complete," *see Garcia v. U.S. Customs and Border Protection*, 2021 WL 4815945, at *4 (C.D. Cal. Aug. 20, 2021) (finding that where response was incomplete after statutory deadline, the plaintiff could file suit under constructive exhaustion), and it does not dispute exhaustion in its response, the Court finds that Plaintiff constructively exhausted his remedies before filing suit.

b. **Whether the Guard Acted in Bad Faith**

Plaintiff claims that the Guard acted in bad faith because (1) the Guard did not have grounds for an extension on the twenty-day deadline for unusual circumstances and (2) a JAG inappropriately served as a denial authority.

Upon a showing of agency bad faith, the court must not accord agency affidavits "substantial weight." *Minier v. Central Intelligence Agency*, 88 F.3d 796, 803 (9th Cir. 1996). "The mere allegation of bad faith," however, "should not undermine the sufficiency of agency submissions." *Id.* (internal citations omitted).

There must be tangible evidence of bad faith. *Id.* Even if a plaintiff presents evidence of bad faith, he is still not entitled to the documents unless a record is improperly withheld. *Id.* "Thus, the remedy for a showing of bad faith is to review the agency affidavits with greater scrutiny, not to require disclosure of properly exempted documents." *Id.*

Plaintiff argues that the Guard acted in bad faith by claiming "unusual circumstances" as grounds for delaying its initial response to his request on August 30, 2023. (ECF Nos. 57, AR006, 94 at 11.) The FOIA defines "unusual circumstances" as the need (1) to search for and collect the requested records from locations separate from the office processing the record request, (2) to search for, collect, and appropriately examine a voluminous amount of records requested in a single request, or (3) to consult with another agency having a substantial interest in the request or among two or more components of the same agency with substantial subject matter interest. 5 U.S.C.A. § 552(a)(6)(B)(iii). The Guard stated that its unusual circumstances included "the Agency's limited number of available and authorized personnel who are able to collect and review the voluminous collected records." (ECF No. 57, AR006.) In a declaration, Daniel L. McFadden, Attorney Advisor for the National Guard, stated that while his team was looking for the relevant AR 15-6 investigation, he noticed that portions of the document were missing, and needed to reach out to the OSJA in Las Vegas. (ECF No. 87-1 at 5.) Because of this additional step, and the need to review the material for redactions, McFadden drafted the letter for SSG Avalos exercising an extension under FOIA. (*Id.*) These are sufficient reasons for an extension under the statute.

c. **Adequate Searches**

Plaintiff argues that the search for documents was inadequate because he attempted to refine his request, and the Guard refused to adjust its search. (ECF No. 94 at 19.) He also claims that the Guard has not provided sufficient proof

that the search was adequate because it failed to provide a proper *Vaughn* index. (ECF No. 94 at 23.) The Guard contends that the investigation that Plaintiff sought in his follow-up request was under the Nevada Attorney General and therefore could not be produced by the Guard, and that a *Vaughn* index is not required under the circumstances, because it produced sufficiently detailed declarations describing the process of the search and the applicable exemptions. (ECF No. 128 at 3.)

To comply with the FOIA, an agency must conduct a "'search reasonably calculated to uncover all relevant documents.'" *Hamdan v. U.S. Dept. of Justice*, 797 F.3d 759, 770 (9th Cir. 2015) (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir.1985). In so doing, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but whether the *search* for those documents was *adequate*." *Id.* at 770-771 (quoting *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964 (9th Cir. 2009) (emphasis in original)). The agency must show that it conducted an adequate search "beyond a reasonable doubt." *Transgender Law Center v. Immigration and Customs Enforcement*, 46 F.4th 771, 779 (9th Cir. 2022).

The agency may rely on "reasonably detailed, non-conclusory affidavits and declarations submitted in good faith," *id.* describing "what records were searched, by whom, and through what process." *Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury*, 534 F.Supp.2d 1126, 1131 (N.D.Cal.2008) (citing *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C.Cir.1994)). The purpose of this requirement is "to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C.Cir.1990).

### i. **Adequacy of Search**

A search has found to be inadequate where the agency "did not

appropriately respond to 'positive indications of overlooked materials'" provided by the plaintiff, and "did not hew to their duty to follow 'obvious leads.'" *Transgender Law Center*, 46 F.4th at 780 (internal citations omitted). While Plaintiff cites that the Guard's response came up with the wrong investigation, he does not demonstrate the search terms, records investigated, or process were inadequate, and neither does he argue that he is currently missing any of the requested documents.

Plaintiff disputes that the search was adequate because the Guard produced only an AR 15-6 investigation, which Plaintiff believed to be insufficient and promptly alerted the Guard of the information he sought without receiving a response. (ECF No. 127 at 2, 4.) The Guard claims that the second investigation to which Plaintiff is referring was undertaken by the Nevada Attorney General's office, and therefore would not be in the possession of the Guard. (ECF No. 128 at 3.) In SSG Avalos' declaration, he specifically addresses the Guard's limitation on producing certain documents, stating "paperwork concerning Plaintiff's termination from the Nevada OOM would not be in the Guard's custody because OOM is a state agency." (ECF No. 87-2 at 5.) Additionally, Plaintiff states that he did, in fact, ultimately receive the investigation documents he was looking for from the Nevada Attorney General. (ECF No. 127 at 2.)

In *Abhyanker v. U.S. Patent & Trademark Office*, the court held that "given that USPTO found all of the documents that Abhyanker requested in his two FOIA requests, there can be no question that USPTO used a search method sufficient to produce the information that Abhyanker requested." 2024 WL 3908107, at *6 (N.D. Cal. Aug. 19, 2024). Similarly, besides the investigation report, which the Guard clarified was not in its possession (ECF No. 128 at 3) and Plaintiff ultimately received from the Nevada Attorney General (ECF No. 127 at 2), Plaintiff does not allege that he is missing any of his requested documents. Under the FOIA, an agency "must be in control of the requested material at the time the

FOIA request is made." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 145 (1989). The Guard has sufficiently demonstrated that the personnel investigation that it was unable to product in its initial response was not an agency record. *See Rojas v. Federal Aviation Administration*, 941 F.3d 392, 396 (9th Cir. 2019) (the burden is on the agency to demonstrate . . . that the materials sought are not agency records or have not been improperly withheld). The Court therefore finds that the search was adequate as a matter of law.

i. **Lack of *Vaughn* Index and Sufficiency of Affidavits Provided**

"To carry their summary judgment burden, agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption.'" *Yonemoto*, 686 F.3d at 688 (quoting *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir.2004) (alterations in original). This is typically known as a "*Vaughn* index." *Id*; *see Vaughn v. Rosen*, 484 F.2d 820, 823–25 (D.C. Cir. 1973). A *Vaughn* index is not necessary in all FOIA cases, and the Ninth Circuit "evaluates a disclosure's substance, not its form." *W. Res. Legal Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, No. 3:19-CV-01119-AC, 2020 WL 6829767 (D. Or. Nov. 20, 2020) (citing *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1044 (9th Cir. 1999)).

When an agency denies a request, FOIA requires the agency to justify the denial "with a sufficiently detailed description of what it is refusing to produce and why so that the requester and the court can have a fair idea what the agency is refusing to produce and why." *Id.* (citing *Fiduccia*, 185 F.3d at 1042). "The agency must disclose as much information as possible without thwarting the purpose of the exemption claimed." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995).

The Guard argues that it did not need to produce a *Vaughn* index in this case because it offered sufficiently detailed justifications for withholding the information and demonstrated that it fell within the claimed exemptions. (ECF No. 128 at 5.) Plaintiff disputes this claim and says that the declarations offered by Guard employees do not accurately describe the documents or exemptions applied. (ECF No. 127 at 3.)

The Guard provided three declarations from individuals that helped prepare the responsive documents; only McFadden's describes the application of exemptions to the responsive documents. (ECF No. 87-1.) The cover letter attached to the FOIA response also addresses the redactions and withholdings in the responsive documents. For the AR 15-6 investigation, "sworn statements from third parties, evidence provided by third parties, and notes and analysis from an investigator" were exempted under Exemptions 5, 6, and 7(C). (ECF No. 57, AR008.) It states that "personal information" such as "social security numbers, DOD identification numbers, account numbers, and sworn testimony whose release in response to a FOIA request could lead to retaliation" was redacted under Exemptions 6 and 7. (*Id.*) Finally, it concludes that "notes and analysis from the investigator" were exempt under Exemption 5. (*Id.*)

The cover letter also addresses the first set of responsive emails, stating that communications between JAG and NVNG HRO or personnel discussing Plaintiff's termination and/or referencing the AR 15-6 investigation after April 1 were withheld under Exemption 5 as confidential communications subject to attorney-client privilege. (*Id.*)

The second set of responsive emails also included a cover letter explaining the application of exemptions. (ECF No. 57, AR138.) In addition to explaining that the Guard was not the custodian of certain requested records, the letter states the responsive emails were redacted pursuant to Exemptions 4, 5, and 6. (*Id.*) This included social security numbers and personal information under

Exemption 6, confidential commercial information, including account and IP numbers, as well as barcodes related to commercial and privileged products under Exemption 4, and security measures addressing and conducted as part of the deliberative process under Exemption 5. (*Id.*)

The Court finds that the information provided by the Guard is sufficient to describe the application of exemptions to the AR 15-6 investigation and its exhibits, as well as emails between NVOOM and the JAG. It is not, however, sufficient to describe the application of Exemption 5 to either set of responsive emails, where it is not clear how they relate to a deliberative process without further description of senders, recipients, and content.

Therefore, the Court will order a *Vaughn* index of the responsive emails explaining in more detail how the named exemptions apply to the documents.

ii. **Application of Exemptions**

Plaintiff disputes the application of Exemptions 5, 6, and 7 because exemptions "may not be used to hide misconduct and unlawful behavior." (ECF No. 127 at 6.) He claims that discrepancies in the redacted documents of the administrative record point to an erroneous application of the statute for improper purposes. (ECF No. 94 at 21.) Related to the Exemptions themselves, he claims that Exemption 5 cannot apply to communications between the Nevada Office of the Military Human Resources Office and the Nevada Office of the Staff Judge Advocate because they are separate state and federal entities. (ECF No. 93 at 12.) He also argues that Exemption 7(C) should not be available to the Guard because it is not a law enforcement agency. (ECF No. 127 at 7.) Plaintiff does not dispute the application of Exemptions 2 and 4 and therefore the Court does not address them here.

The act "contains nine exemptions ... which a government agency may invoke to protect certain documents from public disclosure." *Minier v. Central Intelligence Agency,* 88 F.3d 796, 800 (9th Cir.1996). Withholding is permissible

"only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" and only after "consider[ing] whether partial disclosure of information is possible" and taking "reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A). The Supreme Court has "consistently stated that FOIA exemptions are to be narrowly construed." *Dep't of Just. v. Julian*, 486 U.S. 1, 8 (1988).

"The agency resisting disclosure of requested information has the burden of proving the applicability of an exemption." *Minier*, 88 F.3d at 800. The agency may meet this burden "by submitting a detailed affidavit showing that the information 'logically falls within one of the claimed exemptions.'" *Id.* "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further" and may grant summary judgment to the government based entirely on the basis of information set forth in the affidavit. *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008). A district court "has jurisdiction to compel an agency to disclose improperly withheld agency records." *Id.* at 803.

### 1. **Exemption (b)(7)(C)**

Plaintiff objects to the application of exemption (b)(7)(C) on the grounds that the Guard is not a law enforcement agency and therefore should not be able to exercise the privileges of a law enforcement agency. (ECF No. 127 at 7.) The Guard argues that although it is not a law enforcement agency, the records were compiled for law enforcement purposes because they were created in connection with an administrative investigation of employee misconduct, "which could ultimately reveal criminal misconduct." (ECF No. 122 at 10-11.) The Court agrees with Plaintiff that the investigation was not compiled for a law enforcement purpose and therefore Exemption 7 is not available.

FOIA Exemption (b)(7) includes six different exemptions under the umbrella of compilation for law enforcement purposes. 5 U.S.C. § 552(b)(7)(A)-(F).

14

Exemption (b)(7)(C) exempts records or information "only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."

To qualify as law-enforcement records, the documents must arise out of "investigations which focus directly on specifically alleged illegal acts which could, if proved, result in civil or criminal sanctions." *Bartko v. United States Dep't of* Justice, 898 F.3d 51, 64 (D.C. Cir. 2018) (quoting *Rural Hous. All. v. U.S. Dep't of Agric.,* 498 F.2d 73, 81 (D.C. Cir.), *supplemented,* 511 F.2d 1347 (D.C. Cir. 1974)). Records documenting only "government surveillance or oversight of the performance of duties of its employees" do not qualify. *Id.*; *see also Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984) (Exemption 7 does not shield internal agency investigations "in which an agency, acting as the employer, simply supervises its own employees."). Nor is the mere possibility of a legal violation sufficient, because "[a]ny internal auditing or monitoring conceivably could result in disciplinary action, in dismissal, or indeed in criminal charges against the employees." *Id.* (quoting *Rural Housing Alliance*, 498 F.2d at 81).

When an agency with administrative and law enforcement functions withholds records under Exemption 7, "a court must scrutinize with some skepticism whether the particular purpose claimed for the disputed documents was, in fact, related to law enforcement purposes." *ACLU of So. Cal v. U.S. Immigration and Customs Enforcement*, 739 F. Supp. 3d 805, 823 (C.D. Cal. 2024) (internal citations omitted). The agency must show: (1) "the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws,'" and (2) "there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Id.* (quoting J*efferson v. DOJ, Office of Professional Responsibility*, 284 F.3d 172, 177 (D.C. Cir. 2002)).

The Guard argues that the documents were compiled for a law enforcement purpose because the AR 15-6 was an administrative investigation into

15

misconduct that could have resulted in criminal sanctions. (ECF No. 122 at 11.) "Material compiled in the course of internal agency monitoring does not come within Exemption 7(C) even though it might reveal evidence that later could give rise to a law enforcement investigation." *Tax Analysts v. I.R.S.*, 294 F.3d 71, 78 (D. D.C. 2002) (citing *Kimberlin v. Dep't of Justice*, 139 F.3d 944 (D.C. Cir. 1998)). Because the Guard's investigation was not related to the enforcement of federal laws or had a rational nexus to the agency's law enforcement duties, the Court finds that Exemption 7(C) does not apply to the AR 15-6 investigation and related communications.

### 1. **Exemption (b)(6)**

Plaintiff does not directly address the application of Exemption 6 to the requested materials besides claiming that exemptions cannot hide misconduct. (ECF No. 127 at 5.)

FOIA Exemption (b)(6) exempts disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . ." 5 U.S.C. § 552(b)(6). The term "similar files" is to be interpreted broadly, covering all "Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 595 (1982). The Ninth Circuit has adopted a two-part test for balancing individual privacy rights against the public's right of access under this exemption, "which begins with a threshold evaluation of whether the personal privacy interest at stake is 'nontrivial.'" *Transgender Law Center*, 46 F.4th at 783-784 (citing *Cameranasi v. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017)). "A broad range of personal privacy interests are cognizable under FOIA." *Prudential Locations LLC v. U.S. Dep't of Housing and Urban Development*, 739 F.3d 424, 430 (9th Cir. 2013). Individuals not only have an obvious privacy interest in being free from retaliation, harassment, embarrassment, or stigma. *Id.* (citing *Ray,* 502 U.S. at 176–77; *Forest Serv.*

*Emps.,* 524 F.3d at 1026). They also have a privacy interest in simply "keeping personal facts away from the public eye." *Id.* (quoting *Reporters Comm.,* 489 U.S. at 769). The only distinction between the (b)(6) and (b)(7)(C) balancing tests is the magnitude of the public interest required to override the respective privacy interests they protect. *Tuffly v. U.S. Dep't of Homeland Security*, 870 F.3d 1086, 1092 n.5 (9th Cir. 2017) (quoting *Forest Serv. Emps. For Envtl. Ethics v. U.S. Forest Serv.,* 524 F.3d 1021, 1025 n.2 (9th Cir. 2008)).

The Guard argues that the same information from the AR 15-6 investigation it claims is protected by (b)(7)(C) is protected by this exemption because Plaintiff has not identified any cognizable public interest that outweighs the interest in privacy. (ECF No. 122 at 11.) McFadden's declaration explains that Exemption 6 should apply because "the investigation includes identities of individuals who participated in the investigation and who provided statements that included their contract information (including DOD identification numbers and/or Social Security numbers) in relation to substantiated misconduct by the Plaintiff, which risked an unwarranted invasion of privacy to third parties." (ECF No. 87-1 at 6.) The Guard argued that those individuals have a substantial privacy interest in avoiding disclosure of their association with a misconduct investigation. (ECF No. 122 at 11.) This is a cognizable personal privacy interest under FOIA. In *Abhanyanker,* the court found that the names of individuals involved in disciplinary investigations and the names and signatures of members of the Committee on Discipline were covered by Exemptions 6 and 7(C) because it impaired the privacy of those facing disciplinary investigation and the privacy of members on the Committee. 2024 WL 3908107, at *10 (N.D. Cal. Aug. 19, 2024); *see also Horvath v. U.S. Secret Service*, 419 F. Supp. 3d 40, 47 (D. D.C. 2019) (applying Exemption 6 to administrative investigative files).

Plaintiff does not dispute this is a significant privacy interest and has not stated an overriding public interest in the disclosure of this material. It is notable

that other courts have found that "a mere desire to review how an agency is doing its job, coupled with allegation that it is not, does not create a public interest sufficient to override the privacy interests" protected by Exemption 6. *See Horvath*, 419 F. Supp. 3d at 49 (citing *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1054 n.5 (D.C. Cir. 2009) ("[T]he rationale of … *McCutchen* for requiring more than unsupported allegations that an agency is not doing its job applies under FOIA Exemption 6 as well."). Therefore, this information was properly redacted under Exemption 6.

The Guard also alleges that the responsive emails produced in May and August 2025 also contained personal identifying information that was properly redacted under Exemption 6, including social security numbers, cell phone numbers of third parties, "and other personal information." (ECF Nos. 87-1 at 8; 111.) The cover letter states that "the personnel involved whom the information pertains to also have a substantial privacy interest in withholding such personal information to prevent any unwarranted invasion of privacy." (*Id.*) Plaintiff argues that redactions were erroneously applied to the May 7, 2025, batch of emails. (ECF No. 94 at 21.) He alleges in one case that Exemptions 4, 5, and 6 should not have applied to an email exchange he had with a union steward about workplace harassment but does not explain which exemption he is challenging and why. (*Id.*) He claims that "only statements by Mr. Boldry and Mr. Lawrence were heavily redacted improperly using Exemptions 4, 5, and 6," but does not point to specific examples. (*Id.*) On the other hand, he suggests some emails should have been redacted for personal identifying information. (*Id.*)

Although Plaintiff's opposition to the application of Exemption 6 is vague, it is still the Guard's burden to show that each of the proffered exemptions applies to the information it is redacting. While the Court believes the information cited by the Guard would be properly covered by Exemption 6, a *Vaughn* index will assist in ensuring that the proper redactions were made.

### 1. **Exemption (b)(5)**

FOIA Exemption (b)(5) applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As a result, the rule protects from disclosure "those documents normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975). The Guard asserts an exemption under the deliberative process privilege for the AR 15-6 investigation. (ECF No. 122 at 12.) To assert the privilege, an agency must show that a document is both predecisional and deliberative. *Transgender Law Center*, 46 F.4th at 783 (citing *Nat'l Wildlife Fed'n v. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)). A document is "predecisional" if it was "prepared in order to assist an agency decisionmaker in arriving at his decision." *Id.* (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). A document is "deliberative" if "disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* (quoting *Assembly of the State of Cal. v. Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992)).

The Guard argues that the AR 15-6 investigation contained notes and analysis from the investigator officer that constituted privileged communication among agency personnel in the deliberative process, including internal security procedures. (ECF No. 122 at 12.) Plaintiff argues that Exemption 5 should not apply because the Guard "failed to mention the existence of any investigation or inquiry," but this is incorrect. (ECF No. 112 at 9.) Courts have found that an Employee Review Panel's process to determine whether to retain or terminate a plaintiff was pre-decisional and deliberative such that Exemption 5 covered their meetings and consultation with counsel. *Blazy v. Tenet*, 979 F. Supp. 10, 24 (D.

D.C. 1997). Similarly, courts have applied the deliberative process privilege of the pre-decisional opinions of upper-management to make a final determination as to whether the agency should proceed with a disciplinary action related to an internal employee complaint. *Horvath*, 419 F. Supp. 3d 40, 49-50 (D. D.C. 2019). Like those cases, the AR 15-6 investigation conducted by the Guard involved the analysis of investigators as they considered the proper action to take against Plaintiff. Therefore, these materials are covered under Exemption 5.

The Guard also claims Exemption 5 for emails between JAG and NVNG HRO or personnel discussing Plaintiff's termination and/or referencing the AR 15-6 investigation as covered by attorney-client privilege. (ECF No. 87-1 at 8.) Plaintiff appears to misunderstand this description as emails between the NV OOM Human Resources Department (a state agency) and the JAG office, claiming that the JAG office cannot represent the state of Nevada in employee matters and therefore claim attorney-client privilege. (ECF No. 112 at 9.) Emails with the NV OOM were not included in this request or redaction. These emails are properly redacted under Exemption 5. *See Berryhill v. Bonneville Power Administration*, 509 F. Supp. 3d 1288, 1299 (D. Or. 2020) (holding that communications between defendant counsel and their employees for the purpose of formulating and providing legal advice were properly withheld under Exemption 5.)

Finally, the Guard claims it applied Exemption 5 to the supplemental emails provided on May 7, 2024, and August 8, 2025. (ECF Nos. 57, AR138, 111, Administrative Record Cover Letter.) Both cover letters describe that the information redacted related to security and information technology-related measures and processes on their own and conducted as part of the deliberative process. (*Id.*) Without further detail or specificity as to the details of which of the hundreds of emails produced by the Guard are covered by the deliberative process privilege and why, the Court is unable to find that they were properly redacted under Exemption 5. *See Shannahan v. I.R.S.*, 637 F. Supp. 2d 902, 917

(W.D. Wash. 2009) (where defendant asserted in a general manner that Exemption 5 applies to numerous documents, without even a minimal description of particular documents, defendant did not meet its burden). A *Vaughn* index will also resolve the Court's concerns regarding the application of Exemption 5.

### iii. Segregability

The Guard contends that it reviewed the responsive records on a line-by-line basis and released all information that could be segregated without revealing exempt material. (ECF No. 122 at 12.) Plaintiff does not make an argument against segregability, however, this analysis is still required. *See Wiener v. FBI*, 943 F.2d 972, 988 (9th Cir. 1991) (finding that district court made clear error by failing to make specific findings on the issue of segregability).

5 U.S.C. § 552(b) provides that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." The Guard's conclusory assertion that they have segregated the responsive records is insufficient. *American Immigration Council v. U.S. Dep't of Homeland Security*, 950 F. Supp. D 221, 248 (D. D.C. 2013). The Court therefore finds that the Guard must at least submit a declaration under penalty of perjury that it made every reasonable effort to produce all reasonably segregable, non-exempt portions of the documents. *See Judicial Watch, Inc. v. U.S. Dep't of Housing and Urban Development*, 20 F. Supp. 3d 247, 259 (D. D.C. 2014); *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 781 (9th Cir. 2015).

### d. Request for Sanctions

Plaintiff argues that the Guard has engaged in dilatory and bad faith behavior in responding to his FOIA request such that the Court should order sanctions under Federal Rules of Civil Procedure 11, 34, and 37. (ECF No. 112 at 22.) The Guard did not respond to these allegations in its opposition. (ECF Nos. 122, 128.)

21

A motion for sanctions must be made separately from other motions and must describe the specific conduct that allegedly violates Rule 11(b). Fed. R. Civ. P. 11(c)(2). Rules 34 and 37 address the production of documents in discovery, which is not relevant here and requires a separate motion. Fed. R. Civ. P. 34; Fed. R. Civ. P. 37(a)(1). The Court therefore does not consider Plaintiff's arguments for sanctions at this time.

**IV.     Conclusion**

It is therefore ordered that the Guard's Motion for Summary Judgment (ECF No. 122) is DENIED.

It is further ordered that the Guard must provide a *Vaughn* index for the responsive emails provided on May 7, 2024, and August 8, 2025, as well as full explanations of their withholdings under all relevant FOIA exemptions for any records and redacted portions not made available to Plaintiff to meet the Guard's burden of a segregation analysis.

It is further ordered that Plaintiff's Motion for Summary Judgment (ECF No. 94) and Supplemental Motion for Summary Judgment (ECF No. 112) are GRANTED IN PART.

Dated this 25th day of March, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE